DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone (213) 633-6800
Facsimile (213) 633-6899

Mary H. Haas (State Bar No. 149770)
maryhaas@dwt.com

Attorneys for Judgment Lien Holder
HENDRICKS & LEWIS PLLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE CLINTON, an individual,<br><br>                    Plaintiff,<br><br>          vs.<br><br>WILL ADAMS, *et al.*,<br><br>                    Defendant. | Case No. **CV 10-09476-ODW-PLA**<br><br>**RESPONSE OF JUDGMENT LIENHOLDER HENDRICKS & LEWIS TO PLAINTIFF'S MOTION FOR DISTRIBUTION AND DIVISION OF SETTLEMENT FUNDS AND REQUEST FOR ALTERNATE DISTRIBUTION WITH EXHIBIT A**<br><br>Date:        July 16, 2012<br>Time:        1:30<br>Location:    Courtroom 11 |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

BACKGROUND FACTS ..................................................................................... 2

ARGUMENT ....................................................................................................... 4

I.    THERE IS NO LEGITIMATE BASIS TO ALLOCATE ANY PROCEEDS TO CLINTON. ................................................................... 4

    A.    Clinton Failed to Claim and Therefore Waived any Exemption. ....................................................................................... 5

    B.    The Authorities Clinton Cites Do Not Aid Him Because Their Focus is Wages, Not Copyright Infringement Damages. .................................................................. 5

    C.    The Equities Favor Hendricks & Lewis. .................................. 8

II.    There is No Basis for a Distribution to Thennisch AHEAD OF HENDRICKS & LEWIS. .................................................................... 9

    1.    Under Fleet Credit Corp. v. TML Bus Sales and Del Conte Masonry Co. v. Lewis, Hendricks & Lewis's Judgment Creditor Lien has Priority over Thennisch's Claim; None of Clinton's Cited Cases Are to the Contrary. ........................................................ 10

    2.    Thennisch Has Failed to Provide Adequate Evidence to Support His Claim. ................................... 12

III.    ALG DOES NOT HAVE A PERFECTED SECURITY INTEREST IN COLLATERAL PROTECTED BY UCC Article 9 AND ITS EQUITABLE LIEN CLAIMS FAIL. ........................... 12

    A.    ALG Does Not Have a Perfected UCC Security Interest. ................................................................................. 12

    1.    ALG Failed to Perfect Any Security Interest It Claims. .......................................................................... 13

    2.    Clinton's "Assignment of Monies" Did Not Grant a Security Interest in This Action, and the Referenced Collateral is Not Subject to Protection Under the UCC. ................................................................................... 14

    B.    ALG Should Not Be Granted an Equitable Lien in the Proceeds for its Fees and Costs. .......................................... 15

    1.    ALG is Not Entitled to an Equitable Lien under

RESPONSE TO MOTION FOR DISTRIBUTION
DWT 19854696v1 0081687-000003

i

**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

County of Los Angeles v. Construction Laborers
Trust Funds for its Fees and Costs in the Action or
Matters Other than the Action.........................................15

2.    ALG is Not Entitled to an Equitable Charging Lien
for its Fees and Costs in this Action. ............................17

CONCLUSION .....................................................................................18

RESPONSE TO MOTION FOR DISTRIBUTION
DWT 19854696v1 0081687-000003

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

**CASES**

*Bennett v. Medtronic, Inc.,*
   285 F.3d 801 (9th Cir. 2002)........................................................ 16

*Carroll v. Interstate Brands Corp.,*
   99 Cal. App. 4th 1168, 121 Cal. Rptr. 2d 532 (2002)........................ 17

*Cetenko v. United Cal. Bank,*
   30 Cal. 3d 528, 638 P.2d 1299, 179 Cal. Rptr. 902 (1982) ............... 11

*Clancy v. State Bar,*
   71 Cal.2d 140, 77 Cal. Rptr. 657 (1969) ..................................... 18

*Clinton v. Universal Music Group, Inc.,*
   No. CV 07-00672 PSG (C.D. Cal.)............................................... 3

*County of Los Angeles v. Construction Laborers Trust Funds,*
   137 Cal. App. 4th 410 (2006) ........................................ 15, 16, 17

*Del Conte Masonry Co. v. Lewis,*
   16 Cal. App. 3d 678, 94 Cal. Rptr. 439 (1971)................... 1, 10, 11, 18

*Donovan v. S. Cal. Gas Co.,*
   715 F.2d 1405 (9th Cir. 1983)...................................................... 7

*Fleet Credit Corp. v. TML Bus Sales, Inc.,*
   65 F.3d 119 (9th Cir. 1995)................................................... 1, 10

*Fletcher v. Davis,*
   33 Cal.4th 61 (2004) ............................................................... 17

*Ford Motor,*
   166 Cal. App. 4th Supp. ...................................................... 5, 6, 7

*Gilman v. Dalby,*
   176 Cal. App. 4th 606, 98 Cal. Rptr. 3d 231 (2009)..................... 10, 12

*Haupt v. Charlie's Kosher Mkt.,*
   17 Cal. 2d 843, 112 P.2d 627 (1941) ................................. 11, 12, 17

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Hunniecutt v. State Bar,*
    44 Cal.3d 362, 243 Cal. Rptr. 699 (1988)................................................ 18

*In re Hurdle,*
    240 B.R. 617 (Bankr. C.D. Cal. 1999) ............................................... 6, 7

*In re Radice Corp.,*
    88 B.R. 422 (Bankr. S.D. Fla. 1988) ............................................ 14, 17

*In re Sabol,*
    337 B.R. 195 (Bankr. C.D. Ill. 2006) .......................................... 14, 15

*Johnson v. Brauner,*
    131 Cal. App. 2d 713, 281 P.2d 50 (1955) ......................................... 6

*Maze v. Sycamore Homes, Inc.,*
    230 Cal. App. 2d 746, 41 Cal. Rptr. 338 (1964)............................ 14, 16

*Nicoletti v. Lizzoli,*
    124 Cal. App. 3d 361, 177 Cal. Rptr. 685 (1981) ............................. 11

*Pangborn Plumbing Corp. v. Carruthers & Skiffington,*
    97 Cal. App. 4th 1039, 119 Cal. Rptr. 2d 416 (2002)................... 10, 11

*San Diego County Carpenters Group Ins. v. Lorea,*
    112 Cal. App. 3d 221, 169 Cal. Rptr. 157 (1980) ............................... 6

*Usery v. First Nat'l Bank of Ariz.,*
    586 F.2d 107 (9th Cir. 1978)........................................................ 7

*Waltrip v. Kimberlin,*
    164 Cal. App. 4th 517, 79 Cal. Rptr. 3d 460 (2008)......................... 11

*Weaver v. Tri City Credit Bureau,*
    27 Ariz. App. 640, 557 P.2d 1072 (1976).................................. 14, 17

*Wlodinguer & Erk CPA's, PLLC v. Clinton,*
    Case No. 10-04394 (S.D.N.Y.) ...................................................... 4

**STATUTES**

15 U.S.C. § 1673(a)(1) ..................................................................... 5, 7

26 U.S.C. § 6321 ............................................................................... 4

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

26 U.S.C. § 6321(f) ..................................................................................... 5

California Code of Civil Procedure § 703.610(b) ....................................... 8

California Code of Civil Procedure §§ 704.010 through 704.210 .............. 5

California Code of Civil Procedure § 704.070 ....................................... 6, 7

California Code of Civil Procedure § 704.070(a)(2) .................................. 6

California Code of Civil Procedure § 704.070(b)(2) .............................. 5, 6

California Code of Civil Procedure § 708 ................................................... 5

California Code of Civil Procedure § 708.210 ......................................... 10

California Code of Civil Procedure § 708.410 ........................................... 2

California Code of Civil Procedure § 708.420 ........................................... 2

California Code of Civil Procedure § 708.450 ........................................... 5

California Code of Civil Procedure § 708.450(a) ............................... 1, 5, 8

California Commercial Code § 9109(d)(7) ............................................... 13

California Commercial Code § 9109(d)(9) ............................................... 13

California Commercial Code § 9301(1) .................................................... 13

California Commercial Code § 9307(b)(1) ............................................... 13

California Commercial Code § 9317(a) .................................................... 13

California Commercial Code § 9501(a)(2) ............................................... 13

Uniform Commercial Code Article 9 ................................................ *passim*

Uniform Commercial Code § 9-203(1) .................................................... 14

Uniform Commercial Code § 9-301(1) .................................................... 13

**RULES**

Rule of Professional Conduct 3-300 ........................................... 2, 17, 18

RESPONSE TO MOTION FOR DISTRIBUTION
DWT 19854696v1 0081687-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## CONSTITUTIONAL PROVISIONS

California Constitution, Article 20.............................................................. 6

California Constitution, Article 20 § 1.5................................................ 5, 6

## TREATISES

42 Cal. Jur. 3d Liens § 10...................................................................... 15

RESPONSE TO MOTION FOR DISTRIBUTION
DWT 19854696v1 0081687-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Hendricks & Lewis PLLC ("H&L"), judgment lienholder and former counsel to Plaintiff George Clinton ("Clinton"), herein appears pursuant to CAL. CODE CIV. PRO. § 708.430(b) and responds to Clinton's proposal for distribution and division of the proceeds of this action (the "Action") among four claimants:  Clinton; his current counsel, Jeffrey P. Thennisch ("Thennisch"); his former counsel, Allan Law Group ("ALG"); and H&L.

## INTRODUCTION

Although Clinton suggests that the Internal Revenue Service ("IRS") is a priority lien claimant, the IRS has not appeared or asserted a lien.  Moreover, Clinton has not offered evidence of a tax *lien*, but rather only a notice of back taxes he owes.  (*See* Clinton's Motion for Distribution and Division of Settlement Funds ("Motion"), Ex. D.)  While Clinton suggests that he will not receive *any* money ("hardly a windfall," Motion at 4), the IRS obligation is *his* obligation and thus, any distribution for it would be to and for his benefit.

To claim proceeds ahead of H&L, Clinton was required to claim an exemption after H&L filed its notice of lien under CAL. CODE CIV. PRO. § 708.450(a).  Because he failed to do so, he waived any exemption he may have had.  He offers no other legitimate legal or equitable basis for a distribution to him.

Similarly, there is no basis for a distribution to Thennisch.  Under California law, the claim of an attorney who undertakes a client's representation *after* a case is initiated and a judgment lien creditor has given notice of lien is subordinate to the judgment lien.  *Fleet Credit Corp. v. TML Bus Sales, Inc.*, 65 F.3d 119 (9th Cir. 1995); *Del Conte Masonry Co. v. Lewis*, 16 Cal. App. 3d 678, 94 Cal. Rptr. 439 (1971).  H&L's service to Clinton, its judgment, lien and notice of lien all predate Thennisch's appearance.  Thus, H&L's claim has clear priority over Thennisch.  Moreover, Thennisch has not offered any documentation of his contingent fee and lien agreement or set forth the hours expended and a description of services that would permit the Court even to assess the reasonableness of his claim.

ALG asserts a lien for attorneys' fees and costs for matters other than this Action of $107,097.67. (Motion, Ex. B.)  Contrary to Clinton's assertion (Motion at 5), ALG also "claims a lien for attorneys' fees and costs incurred in this case" of $117,470.05 (Motion, Ex. B).  ALG also claims a security interest in this Action under the Uniform Commercial Code ("UCC"), having filed a Financing Statement with the California Secretary of State.  (Declaration of O. Yale Lewis, Jr. in Support of Opposition of Judgment Lienholder Hendricks & Lewis ("Lewis Decl.") ¶ 26, Ex. H.)  However, ALG's security interest is not perfected because it was not recorded in Clinton's state of residence, Florida.  ("Lewis Decl. ¶ 28, Ex. J.)  There is, moreover, no actual security agreement; Clinton executed only an "Assignment of Monies," which creates neither a lien nor a security interest.  The collateral ALG claims – namely, this Action – is not covered by the Assignment of Monies in any event, and the described collateral – namely, payment intangibles and judgment proceeds – are not protected under UCC Article 9.

ALG does not have a sound basis for claiming an equitable lien for its fees and costs because it was not looking to the proceeds of this Action (initiated on December 10, 2010) when it undertook representation of Clinton on an hourly basis in December 2009.  Moreover, ALG was substituted out before it concluded this Action.  In addition, the Assignment of Monies does not create an enforceable lien and does not comply with Rule 3-300, Rules of Professional Conduct.

H&L is a judgment creditor lienholder of Clinton, having given notice of lien under CAL. CODE CIV. PRO. §§ 708.410 and 708.420 on January 3, 2011, for payment of its judgment of $1,675,639.82, of which $1,405,685.35 remains owing as of June 22, 2012.  Under applicable California law, the case proceeds should be applied to H&L's long-outstanding judgment.

## BACKGROUND FACTS

*H&L and Clinton.*  From spring 2005 through August 2008, H&L represented Clinton in numerous matters and cases. (Lewis Decl. ¶ 5.)  When H&L resigned as

Clinton's counsel in August 2008, Clinton owed more than $1.5 million in unpaid attorneys' fees and costs. (Lewis Decl. ¶ 6.)  Because Clinton failed to pay or make any arrangement to pay, or even respond to H&L's settlement proposals, H&L initiated arbitration before the American Arbitration Association in March 2009 under its agreement with Clinton. (Lewis Decl. ¶¶ 7-8.)  After a hearing on the merits, the arbitration panel awarded H&L $1,519,712.74 plus attorneys' fees and costs of $155,927. (Lewis Decl. ¶ 10.)  Again, Clinton failed to pay or make any arrangement to pay. (Lewis Decl. ¶ 11.)  Consequently, H&L petitioned the United States District Court for the Western District of Washington for an order confirming the arbitration award and for judgment thereon, which Clinton unsuccessfully opposed. (Lewis Decl. ¶ 12.)  On May 28, 2010, the court entered judgment in favor of H&L for $1,675,639.82 plus interest. (Lewis Decl. ¶¶ 2, 14, and Ex. A.)  On August 10, 2010, H&L registered its judgment in this Court. (Lewis Decl. ¶ 3, Ex. B.)  On January 3, 2011, H&L filed a notice of lien in this Action based on its judgment. (Lewis Decl. ¶¶ 4, 167, Ex. C.)  Then, Clinton sued H&L for alleged malpractice in the Western District of Washington, and sought to use the malpractice case as a shield against H&L's judgment collection efforts. (Lewis Decl. ¶ 23.)  All of Clinton's claims have been dismissed for failure to state claims upon which relief can be granted and because of the applicable statute of limitations. (Lewis Decl. ¶ 25.)  As of June 22, 2012, $1,405,685.35 remains unpaid. (Lewis Decl. ¶ 17.)

*The Allan Law Group.*  ALG states that it was retained by Clinton on December 27, 2009. (Lewis Decl. ¶ 26, Ex. H.)  It appeared in the H&L/Clinton fee arbitration (*see* Motion, Ex. C), and thereafter unsuccessfully defended Clinton in the action to confirm H&L's arbitration award. (Lewis Decl. ¶ 26, Ex. H.)  ALG also states that it represented Clinton in general business matters and licensing, provided advice in *Clinton v. Universal Music Group, Inc.*, No. CV 07-00672 PSG (JWJx) (C.D. Cal.) (but did not actually appear), and defended Clinton in

*Wlodinguer & Erk CPA's, PLLC v. Clinton*, Case No. 10-04394 (S.D.N.Y.), an action brought by his accountants for payment for their services on June 3, 2010. (Motion, Ex. C; Lewis Decl. ¶ 26, Ex. H.)  ALG initiated this Action on December 10, 2010, and represented Clinton for approximately seven months until it substituted out as counsel in July 2011.  (Lewis Decl. ¶ 27, Ex. I (Dkt. 1, 47).)

Although Clinton executed only an "Assignment of Monies" on November 30, 2010, ALG claims a UCC security interest in this Action for its fees and costs. (Lewis Decl. ¶ 26, Ex. H.)  On December 1, 2010, ALG filed a UCC-1 Financing Statement with the California Secretary of State, claiming this Action and its proceeds as collateral.  (*Id.*)  ALG does not claim to have filed the financing statement in Florida where Clinton resides.  (*Id.*)  (Lewis Decl. ¶ 29, Ex. K.)

On July 19, 2011, ALG filed a notice of lien for outstanding fees and costs consisting of $107,097.67 in other matters in which it represented Clinton, and $117,470.05 in this Action.  (*See* Motion Ex. B; Lewis Decl. ¶ 27, Ex. I (Dkt. 43).)

*Jeffrey P. Thennisch.*  Thennisch was permitted to appear here *pro hac vice* on August 2, 2011, approximately one year after H&L filed its judgment lien, and one month after ALG filed its notice of lien.  He "readily admits" that he was aware of the liens when he became involved in this Action.  (Motion at 12.)

A chronology of the foregoing pertinent events is attached as Exhibit A.

## ARGUMENT

## I.  THERE IS NO LEGITIMATE BASIS TO ALLOCATE ANY PROCEEDS TO CLINTON.

Clinton requests $37,175.72 to pay back taxes.  He claims a tax lien but has not offered evidence of a lien, only a notice of back taxes.[1]  (*See* Motion, Ex. D.) He failed to timely claim and therefore waived any exemptions he may have had.

---

[1] 26 U.S.C. § 6321 provides for a lien for taxes if the person liable neglects or refuses to pay after demand.  But the lien imposed by Section 6321 "shall not be valid as against any . . . judgment lien creditor until notice thereof . . . has been filed

### A. Clinton Failed to Claim and Therefore Waived any Exemption.

CAL. CODE CIV. PRO. § 708.450(a) provides that when a judgment lien is created under § 708, as H&L's was, the judgment debtor may claim certain exemptions by application "not later than 30 days after the judgment debtor has notice of the creation of the lien." Clinton has not made any claim of exemption since the lien was filed 18 months ago. Section 708.450 provides that "[t]he failure of the judgment debtor to make a claim of exemption under this section constitutes a waiver of the exemption." CAL. CODE CIV. PRO. § 708.450(a). Consequently, there is no basis for allocating a portion of the Action's proceeds to Clinton.

### B. The Authorities Clinton Cites Do Not Aid Him Because Their Focus is Wages, Not Copyright Infringement Damages.

Clinton argues for a portion of the case proceeds based upon 15 U.S.C. § 1673(a)(1) and CAL. CODE CIV. PRO. § 704.070(b)(2), neither of which is applicable. Those provisions address "earnings" which are not a subject of this Action which, as Clinton acknowledges, dealt with infringement damages or royalties equivalents. (Motion at 7-8.)

The California Legislature has enacted a "comprehensive and precisely detailed scheme governing enforcement of money judgments." *Ford Motor*, 166 Cal. App. 4th Supp. at 7. "As a general rule, all property of the judgment debtor is subject to enforcement of a money judgment." *Id.* at 8. As Clinton notes (Motion at 6), Article 20 § 1.5 of the California Constitution provides that the "Legislature shall protect, by law, from forced sale a certain portion of the homestead and other property of all heads of families." To satisfy this mandate, the Legislature enacted statutes specifically exempting certain property from levy as set forth in CAL. CODE CIV. PRO. §§ 704.010 through 704.210. *Ford Motor*, 166 Cal. App. 4th at 8. These exemptions "are wholly statutory and cannot be enlarged by the courts." *Id.* at 8.

---

by the Secretary" as provided in 26 U.S.C. § 6321(f). Clinton has not provided evidence of any filing of a notice of lien.

Accordingly, contrary to Clinton's contention (Motion at 6), Article 20 of the California Constitution does not represent a basis to permit the exemption of property which is not otherwise exempted by statute.[2]

CAL. CODE CIV. PRO. § 704.070(b)(2) shields a percentage of "paid earnings that are levied upon or otherwise sought to be subjected to the enforcement of a money judgment . . . if prior to payment to the employee they were not subject to an earnings withholding order or an earnings assignment order for support."[3] However, royalties do not fall within Section 704.070's definition of "paid earnings," and are not exempt under it. *In re Hurdle*, 240 B.R. 617, 624-25 (Bankr. C.D. Cal. 1999) (rejecting the debtor's claimed exemption over music royalty payments). "Paid earnings" are "compensation payable by an employer to an employee for personal services performed by such employee," while "'royalty' commonly refers to a payment made to the owner of property for permitting another to use the property, and does not include personal services." *Id.* at 624-25 (internal quotation marks omitted).

*Ford Motor* does not alter *Hurdle*. *Ford Motor* starts from the premise that some amount was exempt because the funds in the levied account were traceable to wages, the quintessential "paid earnings" under Section 704.070.[4] By contrast,

---

[2] Moreover, Article 20 § 1.5 does not lend Clinton much assistance even as a matter of policy. The constitutional provision was aimed at protecting families from the disruption of their physical living situations through the seizure of real property. *See San Diego County Carpenters Group Ins. v. Lorea*, 112 Cal. App. 3d 221, 223, 169 Cal. Rptr. 157 (1980) (homeowner may exempt his home from execution of a judgment and forced sale); *see also Johnson v. Brauner*, 131 Cal. App. 2d 713, 719, 281 P.2d 50 (1955) (explaining that the "policy underlying all homestead legislation" stemming from the California Constitution is "to provide a place for the family and its surviving members"). The allocation of judgment proceeds for royalties cannot be equated to the seizure of a personal residence.

[3] "Paid earnings" are expressly defined as earnings "that were paid to the employee during the 30-day period ending on the date of the levy." CAL. CODE CIV. PRO. § 704.070(a)(2).

[4] Ford levied against Waters' checking account which contained funds traceable to her net wages. *Ford Motor*, 166 Cal. App. 4th Supp. at 5. The parties

---

RESPONSE TO MOTION FOR DISTRIBUTION
DWT 19854696v1 0081687-000003

Clinton has failed to identify any statutory exemption for which he qualifies. As Clinton acknowledges, the proceeds of this Action are royalties (Motion at 6), not paid earnings and are not exempt. *See In re Hurdle*, 240 B.R. at 624-25.

Unable to rely on the holding of *Ford Motor*, Clinton cites to language explaining that exemptions are designed to "facilitate the debtor's financial rehabilitation and have the effect of shifting social welfare costs from the community to judgment creditors." *Ford Motor*, 166 Cal. App. 4th Supp. at 8. However, nothing suggests that the Legislature intended to encourage debtors to access liened funds for speculative attempts at financial rehabilitation through litigation, as Clinton proposes. (Motion at 8.) Exemptions are "wholly statutory and cannot be enlarged by the courts." *Ford Motor*, 166 Cal. App. 4th Supp. at 8. "[T]he public policy, expressed in the exemption statutes," is one of "allowing a judgment debtor to retain funds to take care of basic necessaries of life, and to have something to live on until the next paycheck." *Id.* at 15.

Clinton's reliance on 15 U.S.C. § 1673(a)(1) is similarly misplaced because this statute concerns only wage *garnishments*. The "legislative history reveals the statute's dominant purpose as being the preservation of an employee's job." *Donovan v. S. Cal. Gas Co.*, 715 F.2d 1405, 1408 (9th Cir. 1983). "Congress [aimed] to protect employees from the adverse effects of garnishment proceedings and discharges based upon them." *Id. See also Usery v. First Nat'l Bank of Ariz.*, 586 F.2d 107, 110 (9th Cir. 1978) (the Consumer Credit Protection Act was motivated by a "concern for preserving the stability of the employer-employee relationship in the face of . . . garnishment"). Given that § 1673(a)(1) is firmly rooted in the context of wages and the preservation of employment, it has no bearing on royalty proceeds.

---

agreed that § 704.070's 75 percent exemption on levies against paid earnings applied, but disagreed about how to calculate the exempt amount. *Id.* at 6.

CAL. CODE CIV. PRO. § 703.610(b) also does not aid Clinton. "[W]hile the exemption proceedings are pending," this provision allows a court to make orders for the disposition of property that "may be proper under the circumstances of the case." CAL. CODE CIV. PRO. § 703.610(b). Fundamentally, a statutory exemption must apply for this provision to be triggered. Clinton's failure to make an exemption claim "constitutes a waiver of the exemption." CAL. CODE CIV. PRO. § 708.450(a). Thus, no exemption is triggered and no distribution to Clinton is warranted.

## C.    The Equities Favor Hendricks & Lewis.

Clinton asserts that because of a hodgepodge of overlapping "equitable" considerations, established statutory priorities do not apply. Thus, he suggests financial distress and claims that: (1) to rehabilitate himself financially he is equitably entitled to $37,175.72 to pay the IRS, and $31,922 for Thennisch, so that he can pursue other litigation against unidentified third parties (Motion at 6, 9, 10) from which H&L would significantly benefit (Motion at 7-8, 18-19); and (2) enforcing H&L's statutory priority would preclude Clinton from obtaining future representation (Motion at 9, 19). These assertions are inaccurate and irrelevant under the controlling case law and statutory framework discussed above, and in fact, the equities, on balance, favor H&L.

Clinton's suggestion of limited income and resources is wildly disingenuous. Records provided by Clinton's two tour booking agencies, Monterrey International and Georg Leitner Productions, show that Clinton received gross revenue from touring of $1,880,664.22 in 2009 and $1,879,816.91 in 2010. (Lewis Decl. ¶ 21, Ex. F (¶¶ 21-22, Exs. 7-8).) In addition to the more than $3.7 million in gross touring revenue in 2009 and 2010, Clinton also accrued royalties in those same years totaling $212,657.53 from UMG, $82,092.64 from Capitol Records, and $18,813.78 from Sound Exchange. (Lewis Decl. ¶ 21, Ex. F (¶¶ 18, 19, 24, Exs. 5, 6, 10).) In addition, in May 2010 – after H&L received an arbitration award against

8

Clinton and just days before H&L's judgment was entered – Clinton took a $250,000 advance against his future royalties from BMI. (*Id.*) BMI records suggest that in 2009 and 2010, Clinton accrued royalties at an average of $123,686.73 per year. (Lewis Decl. ¶ 21, Ex. F (¶ 23, Ex. 9).) In addition, Clinton is quoted in an article on www.huffingtonpost.com on April 27, 2012, that he actually makes more money selling his music online than he does from the music labels, suggesting that he receives significant income in addition to the royalties he receives from Capitol and UMG. (Lewis Decl. ¶ 20, Ex. E.) Clinton also acknowledges receiving Social Security benefits. (Motion at 19.)

Clinton's argument that recognition of H&L's statutory priority will preclude Clinton from obtaining counsel in the future is specious. Application of the statutory framework in this case will provide a clear roadmap – at least under California law – to future Clinton counsel.

Clinton also urges that "enforcement efforts" may be the "best, if not only chance that [Hendricks & Lewis] will actually collect . . ." (Motion at 19.) But this now settled action is one of the enforcement actions from which H&L should be paid; and Clinton's position here provides no comfort that H&L would ever receive any significant payments from future lawsuits against unidentified third parties even if the future litigation were successful.

## II.    THERE IS NO BASIS FOR A DISTRIBUTION TO THENNISCH AHEAD OF HENDRICKS & LEWIS.

Thennisch did not become counsel of record until approximately eight months after H&L's lien was filed on January 3, 2011. (Lewis Decl. ¶ 27, Ex. I, (Dkt. 9, 51).) Consequently, H&L's lien takes priority over any lien related to Thennisch's fees. Moreover, Thennisch has not provided a fee agreement supporting a 30 percent contingency or reflecting the creation of a lien relating to his fees.

1.   **Under Fleet Credit Corp. v. TML Bus Sales and Del Conte Masonry Co. v. Lewis, Hendricks & Lewis's Judgment Creditor Lien has Priority over Thennisch's Claim; None of Clinton's Cited Cases Are to the Contrary.**

In *Del Conte Masonry*, the court held that the judgment creditor's statutory lien had priority over the attorney's lien because the attorney's lien was created *after* the judgment creditor gave notice of its intended lien on the anticipated judgment. 16 Cal. App. 3d at 681. Similarly, in *Fleet Credit*, the Ninth Circuit held that a judgment creditor's lien, filed under CAL. CODE CIV. PRO. § 708.210, had priority over Fleet's attorneys' fees. 65 F.3d at 122. Clinton attempts to distinguish *Fleet* on the basis that Thennisch had a "complete arrangement for fees and costs at the time of retention by Clinton" (Motion at 14), but his retention was nonetheless *after* creation of H&L's judgment creditor's lien and his notice of it. Consequently, Thennisch's claim is subordinate to H&L's lien.

None of Clinton's authorities support a contrary view. In *Gilman v. Dalby*, 176 Cal. App. 4th 606, 609, 98 Cal. Rptr. 3d 231 (2009), on which Clinton relies heavily (*see* Motion at 11, 17, 18), the court considered the relative priorities of a contractual medical lien (given to Gilman who was in the business of factoring medical accounts) and a presumptive contractual attorney lien for fees and costs. *Gilman* held that an attorney lien has priority over a medical lien as a matter of public policy. "[A] medical lien against the recovery in a personal injury lawsuit is not equal in equity to an attorney lien for fees and costs created by a retainer agreement to litigate the [personal injury] lawsuit." *Gilman,* 176 Cal. App. 4th at 618. *Gilman* did not address priority between a first in time judgment creditor's lien and an attorney's lien as Clinton suggests. (Motion at 11, 17.)

Clinton also cites *Pangborn Plumbing Corp. v. Carruthers & Skiffington*, 97 Cal. App. 4th 1039, 1053, 119 Cal. Rptr. 2d 416 (2002), (Motion at 15), which is readily distinguishable because there the "[c]reditor did not file notice of its lien

before Debtor and [the law firm] entered into their fee agreement." *Pangborn* also explicitly recognizes that in the circumstances here the judgment creditor prevails: "Of course, if an attorney does not enter into an agreement for a contractual lien upon litigation proceeds until *after* the action has been filed, and *after* a judgment creditor has given notice pursuant to sections 708.410 and 708.420, the judgment creditor's lien will have priority." 97 Cal. App. 4th at 1051 (citing *Del Conte Masonry*, 16 Cal. App. 3d at 681).

*Waltrip v. Kimberlin*, 164 Cal. App. 4th 517, 79 Cal. Rptr. 3d 460 (2008), does not aid Thennisch because it addressed priority between an attorney's lien and a *subsequent* judgment creditor, as is reflected in the language Clinton quotes. (Motion at 17-18.) *Waltrip* also recognizes that "[a]n attorney lien does not always have priority over other liens; it does *not* have priority over prior liens on the same property." *Id.* at 526 (emphasis added).

*Cetenko v. United Cal. Bank*, 30 Cal. 3d 528, 638 P.2d 1299, 179 Cal. Rptr. 902 (1982), is to the same effect as *Waltrip*, holding that an attorney's prior lien for fees took precedence over a *subsequent* judgment creditor's lien, but recognizing that when a judgment creditor's lien is prior to an attorney's lien, the judgment creditor's lien has priority. *Id.* at 535 (citing *Del Conte Masonry*, 16 Cal. App. 3d 678).

Neither *Nicoletti v. Lizzoli,* 124 Cal. App. 3d 361, 177 Cal. Rptr. 685 (1981) nor *Haupt v. Charlie's Kosher Mkt.*, 17 Cal. 2d 843, 112 P.2d 627 (1941) assists Clinton or Thennisch with the priorities or equities. (Motion at 16-17.) In *Nicoletti*, a personal injury action, the court subordinated a judgment creditor's lien to the consensual liens of certain medical professionals who performed services when the plaintiff was injured and whose claims were created first but were not perfected. The court concluded that as a matter of public policy, medical professionals should not be required to perfect their liens because such a requirement would discourage them from providing emergency medical care. *Nicoletti,* 124 Cal. App. 3d at 368-

11

70. In *Haupt*, also a personal injury action, plaintiff's attorneys proceeded under a contingent fee contract that provided for a lien on proceeds. At the time of the verdict, a creditor of the client attempted to levy on case proceeds. The court held the attorney's contractual lien had priority over the subsequent attachment. *Haupt*, 17 Cal. 2d at 844, 846.

> ## 2.    Thennisch Has Failed to Provide Adequate Evidence to Support His Claim.

Apart from relative priorities, Thennisch should not receive any proceeds because, like the defendant attorneys in *Gilman*, he has "presented no evidence that [he] ha[s] an attorney lien entitling [him] to deduct [his] litigation costs from the settlement recovery." 176 Cal. App. 4th at 620. It is not sufficient that "[i]f requested by the Court, I will produce and file under seal my representation and retainer agreement with the Plaintiff in this action." (Declaration of Jeffrey P. Thennisch ¶ 3.) It was his burden to provide evidence to support his claim at the time he requested a portion of the proceeds so that other claimants would have an opportunity to address the sufficiency thereof. Having failed to do so, his claim should also be denied for lack of evidence. *See Gilman,* 176 Cal. App. 4th at 620.

## III.    ALG DOES NOT HAVE A PERFECTED SECURITY INTEREST IN COLLATERAL PROTECTED BY UCC ARTICLE 9 AND ITS EQUITABLE LIEN CLAIMS FAIL.

### A.    ALG Does Not Have a Perfected UCC Security Interest.

ALG filed a UCC financing statement with the California Secretary of State's office, claiming a UCC Article 9 security interest in this Action. However, this claim does not give ALG priority over H&L. First, even if ALG had a security interest – which it does not – its interest is clearly unperfected and therefore subordinate to H&L's judgment lien. ALG filed in California, but was required to file in Florida where Clinton resides. Second, Clinton did not grant a security interest; he merely assigned and agreed to pay from proceeds that might accrue in

12

the future.  Moreover, the claimed collateral – money to be acquired in the future – is not collateral that is subject to protection under UCC Article 9.  Article 9 expressly excludes from protected collateral payment intangibles and rights in judgments.  *See* FSA § 679.1091 ("This chapter does not apply to F.S.A. § 679.1091(e) . . . [a]n assignment of . . . payment intangibles . . . which is for the purpose of collection only [or] (i) [a]n assignment of a right represented by a judgment[.]").  *See also* CAL. COMM. CODE § 9109(d)(7), (9).

### 1.    ALG Failed to Perfect Any Security Interest It Claims.

To obtain priority over other claimants, ALG had to "perfect" its claimed security interest; that is, provide public notice of its interest in the collateral.

UCC § 9-301(1) specifies the law governing perfection and priority of security interests in both tangible and intangible property.  "[W]hile a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral."  FSA § 679.3011(1); CAL. COMM. CODE § 9301(1).  A debtor who is an individual like Clinton is "located" in the state of his principal residence.  FSA § 679.3071(2)(a); CAL. COMM. CODE § 9307(b)(1).  Clinton's principal residence is in Florida, and thus, Florida law governs perfection and priority.

A security interest is perfected in Florida by filing with the Florida Secured Transaction Registry.  FSA § 679.5011(b).  *See also* CAL. COMM. CODE § 9501(a)(2).  ALG filed in California, not Florida as it should have, and consequently, any security interest it may have acquired is unperfected.

Because ALG's security interest, if any, is unperfected, it is subordinate to H&L's judgment lien.  FSA § 679.3171(1)(b)(1) ("A security interest . . . is subordinate to the rights of the following: . . . a person who becomes a lien creditor before the earlier of the time . . . the security interest . . . is perfected.").  *See also* CAL. COMM. CODE § 9317(a).

2.    **Clinton's "Assignment of Monies" Did Not Grant a Security Interest in This Action, and the Referenced Collateral is Not Subject to Protection Under the UCC.**

ALG's financing statement, not signed by Clinton,[5] declares that it covers: "George Clinton's 'chose in action' or claims against members of the musical group The Black Eyed Peas and others for the unauthorized use of Mr. Clinton's master sound recordings(s) of (Not Just) Knee Deep aka Knee Deep (the 'BEP Action') and any and all proceeds arising from the BEP Action" judgment. However, the "Assignment of *Monies*" upon which ALG relies neither expressly granted a security interest in the Action, nor assigned the Action itself, nor granted a security interest in proceeds of the Action. *See In re Sabol*, 337 B.R. 195 (Bankr. C.D. Ill. 2006) (there must be some definitive written indicia of the debtor's intent to grant a security interest; even debtor's testimony that he intended to sign a security agreement is not sufficient). Clinton's "Assignment of *Monies*" does no more than assign money (and other unspecified consideration) that may be acquired in the future. *See Maze v. Sycamore Homes, Inc.*, 230 Cal. App. 2d 746, 754, 41 Cal. Rptr. 338 (1964) (an assignment of monies from a specific source is "some security against dissipation of such funds otherwise by defendant," but "in no manner constituted a lien against the properties and as such was not a true 'security' for the repayment"); *Weaver v. Tri City Credit Bureau*, 27 Ariz. App. 640, 642-43, 557 P.2d 1072 (1976) (an assignment of rents and sale proceeds does not create a security interest, express or equitable, in the underlying property); *see also In re Radice Corp.*, 88 B.R. 422, 425-26 (Bankr. S.D. Fla. 1988) (security interest in proceeds cannot be created without lien in underlying collateral). The financing

---

[5] Under Article 9 as revised in 2001, a financing statement is not required to be signed by a debtor. But unsigned, it cannot represent authentication of a security agreement by a debtor. *See* UCC § 9-203(1). *See also In re Sabol*, 337 B.R. 195.

14

statement is not evidence of the debtor's intention because it was not signed by Clinton. *See In re Sabol*, 337 B.R. 195.

Even if Clinton had granted a security interest in proceeds of this Action, it would not have been a protectable interest under UCC Article 9. Section 109(d)(5) and (9) expressly exclude from collateral protected by the UCC, among others, an assignment of "payment intangibles" for "the purpose of collection only"; and "an assignment of a right represented by a judgment, other than a judgment taken on a right to payment that was collateral." ALG obtained an assignment of payment intangibles (that is, money to be paid in the future) that did not concern a commercial financing transaction and therefore is excluded (*see* cmt. 12), or a right represented by a judgment, both of which are excluded from protection. *Id.*

**B.      ALG Should Not Be Granted an Equitable Lien in the Proceeds for its Fees and Costs.**

"An equitable lien is the right to subject property not in the possession of the lienor to the payment of a debt as a charge against that property." 42 Cal. Jur. 3d Liens § 10, p. 621. For the reasons set forth hereinafter, ALG should not be granted an equitable lien.

**1.      ALG is Not Entitled to an Equitable Lien under County of Los Angeles v. Construction Laborers Trust Funds for its Fees and Costs in the Action or Matters Other than the Action.**

ALG claims an equitable lien under *County of Los Angeles v. Construction Laborers Trust Funds*, 137 Cal. App. 4th 410, 413-15 (2006), which permitted an attorney an equitable lien on case proceeds for the attorney's services on other matters as well as the case covered by the retainer agreement, which expressly granted a lien on "any and all claims or causes of action which are [the] subject of Attorney's representation of client in the Matter" and the attorney undertook to represent the client on the other matters "under the same terms." ALG's claim is

distinguishable from the attorney's claim in *Construction Laborers* in important respects that compel the conclusion that ALG should not be granted an equitable lien.

First, unlike the attorney in *Construction Laborers*, ALG has not suggested that its *fee agreement* with Clinton expressly granted ALG a lien in *any* causes of action. ALG references only the Assignment of Monies executed 10 months later, after ALG had undertaken Clinton's representation on the other matters. In *Construction Laborers*, the lien agreement was in place before the attorney agreed to undertake the representation and before the services in question were provided. Thus, considerations of detrimental reliance or unjust enrichment were implicated. By contrast, ALG undertook Clinton's representation almost a year *before* this Action was initiated and before Clinton signed the November 30, 2010 assignment agreement. (Lewis Decl. ¶ 26, Ex. H.) ALG had already undertaken Clinton's representation in the other matters and could not have been relying on this Action's proceeds. (Lewis Decl. ¶ 19, Ex. D, ¶¶ 26, 27, Exs. H, I.)[6]

Second, ALG was not relying on case proceeds for its fees and costs when it began representing Clinton because those matters were *defenses* of Clinton (H&L and Wlodinger & Erk each sued Clinton) and general business representation from which proceeds could not reasonably be expected. Moreover, ALG was representing Clinton on an hourly basis. Thus, ALG cannot claim the substantial detrimental reliance that favored the equitable lien in *Construction Laborers*.

Third, the Assignment of Monies upon which ALG relies did not expressly create a lien. *See Maze,* 230 Cal. App. 2d at 754 (assignment of monies "in no

----

[6] Courts may take judicial notice of proceedings in other courts. *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002).

manner constituted a lien" and "was not a true 'security' for the repayment");

*Weaver*, 27 Ariz. App. at 642-43; *In re Radice*, 88 B.R. at 425-26.

Finally, the conduct of the lawyer in *Construction Laborers* was said to deserve the protection of a court in equity because the attorney "continued to work for [the client] in trying to, and eventually succeeding, in settling," despite the client's cash flow problems. 137 Cal. App. 4th at 413. Here, by contrast, ALG substituted out of this Action six months after Clinton executed the assignment and nearly a year before the matter concluded.

### 2.    ALG is Not Entitled to an Equitable Charging Lien for its Fees and Costs in this Action.

In California, unlike most jurisdictions, an attorney's lien generally is created only by contract, and not by the mere fact of performing services in a case. *Fletcher v. Davis*, 33 Cal.4th 61, 66 (2004) (citing *Carroll v. Interstate Brands Corp.*, 99 Cal. App. 4th 1168, 1172, 121 Cal. Rptr. 2d 532 (2002)); *Haupt*, 17 Cal.2d at 845. An attorney who secures payment of hourly fees by acquiring a charging lien against a client's future judgment or recovery acquires an interest adverse to the client, and therefore must comply with Rule 3-300, Rules Prof. Conduct ("Rule 3-300").[7] *Fletcher*, 33 Cal. 4th at 71. Attorney liens that fail to meet the requirements of Rule 3-300 are unenforceable. *Id.* at 71-72.

As an agreement entered into 11 months after Clinton retained ALG, the "Assignment of Monies" must comply with Rule 3-300 to be enforceable. *See Fletcher*, 33 Cal. 4th at 68-70. The terms must be fair, reasonable, and fully disclosed in writing, the client must be advised in writing that the advice of an independent lawyer may be sought and the client must consent in writing to the terms. Rule 3-300. ALG has the burden of demonstrating compliance with these

---

[7] "Rule 3-300 is intended to apply where the member wishes to obtain an interest in client's property in order to secure the amount of the member's part due or future fees." Rule 3-300 (Discussion, 3rd para.).

requirements. *Hunniecutt v. State Bar*, 44 Cal.3d 362, 372, 243 Cal. Rptr. 699 (1988) (citing *Clancy v. State Bar*, 71 Cal.2d 140, 146, 77 Cal. Rptr. 657 (1969)).

The Assignment of Monies does not satisfy Rule 3-300. For example, it does not advise Clinton that he is – at least by ALG's interpretation – granting a UCC security interest; it does not contain authorization for the filing of a UCC financing statement; it does not state expressly that by virtue of the assignment ALG would be claiming a lien in the proceeds under the assignment. It also misstates the date of filing of the so-called "Erk Case" as September 15, 2010, when in fact the action was filed on June 3, 2010, and by September 7, 2010, the court had ordered plaintiff to move for default against Clinton by September 20, 2010. The assignment does not contain a written statement that Clinton may seek the advice of an independent lawyer of his choice. Unless this statement is supplied from some other pertinent document, the assignment violates Rule 3-300, rendering any equitable charging lien unenforceable.

## CONCLUSION

Clinton has no legal or equitable basis for a share of the proceeds. Under California law, as reflected in *Del Conte Masonry* and even the cases cited by Clinton, Thennisch's claim is clearly subordinate to H&L's first-in-time judgment creditor lien. ALG does not have either a perfected security interest or a valid lien. For all these reasons, as stated above, the proceeds in this Action should be awarded to H&L.

Respectfully submitted this ___ day of June, 2012.

DATED:  June 25, 2012                    DAVIS WRIGHT TREMAINE LLP
                                         MARY H. HAAS


                                         By: _____/s/ *Mary H. Haas*_____
                                                      Mary H. Haas

                                         Attorneys for Judgment Lien Holder
                                         HENDRICKS & LEWIS PLL

# EXHIBIT A

## TIMELINE

## CHRONOLOGY

| | |
|---|---|
| 2005 – 2008 | H&L represented Clinton |
| March 2009 | H&L initiated arbitration against Clinton |
| 12/27/09 | Clinton retained ALG |
| 12/27/09 – 05/28/11 | ALG defended Clinton in action to confirm judgment |
| 02/04/10 | Final arbitration award issued |
| 05/28/10 | Judgment entered against Clinton in W.D. Wash. |
| 06/03/10 | Wlodinguer, Erk filed action against Clinton |
| 08/10/10 | H&L judgment against Clinton registered in C.D. Cal. |
| 09/17/10 | ALG moved to appear on Clinton's behalf in action brought by Wlodinguer, Erk against Clinton |
| 11/30/10 | Clinton executed Assignment of Monies |
| 12/01/10 | ALG filed UCC financial statement |
| 12/10/10 | Clinton initiated this Action against Will Adams, et al. |
| 01/03/11 | H&L notice of lien as judgment creditor |
| 01/10/11 | Wlodinguer, Erk and Clinton settled |
| 07/19/11 | ALG filed notice of lien for ALG in this Action |
| 07/19/11 | First request to substitute Larry Clough for attorney |
| 08/02/11 | Thennisch appeared in this Action |

Exhibit A - 1

{140290.DOCX }