MARY H. HAAS (State Bar No. 149770)                     JS-6
maryhaas@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Facsimile:  (213) 633-6899

Attorneys for Lienholder
HENDRICKS & LEWIS PLLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE CLINTON, an individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>WILL ADAMS, p/k/a will.i.am, *et al.*,<br><br>        Defendants. | Case No. CV10-09476-ODW (PLAx)<br><br>The Honorable Otis D. Wright, II<br><br>[PROPOSED] FINDINGS AND CONCLUSIONS FOR DIVISION AND DISTRIBUTION OF SETTLEMENT FUNDS |

## I.    BACKGROUND.

This matter originally came before the Court on Plaintiff George Clinton's

Motion for Division and Distribution of Settlement Funds filed under seal in June

2012.  (ECF No. 132.)  The Court's Order on that motion, dated August 7, 2012

and filed under seal ("the 2012 Order"), divided settlement funds from the

underlying action among the Internal Revenue Service ("IRS") for Clinton's

alleged tax liability; Hendricks & Lewis PLLC ("H&L"), a judgment creditor of

[PROPOSED] FINDINGS AND CONCLUSIONS - 1
DWT 24857068v1 0081687-000003

Clinton; Jeffrey P. Thennisch, Clinton's current counsel in this action; and the Allan Law Group ("ALG"), Clinton's former counsel in this and other matters. (ECF No. 149.)

On February 24, 2014, this Court received the Ninth Circuit's decision on H&L's appeal from the 2012 Order, in which the Ninth Circuit determined that Clinton had not substantiated his claimed entitlement to a portion of the settlement funds for his alleged tax liability and therefore reversed that portion of the order allocating funds to the IRS.  (ECF No. 156 at 2-3.)

As to the allocation of the remainder of the settlement funds, because the Ninth Circuit could not reconcile the allocation with the priority claims of the remaining claimants (H&L, Thennisch, and ALG), it remanded for "further findings as to each claimant's entitlement to a lien on the settlement funds, if any, and the relative priority of these liens."  (ECF No. 156 at 4.)  The following findings and conclusions are intended to respond to the Ninth Circuit's decision remanding this matter for further proceedings.

## II.    FINDINGS OF FACT.

Based on the evidence presented by the respective claimants to the settlement funds in the original briefing and the proposed findings and conclusions submitted by the claimants, the Court finds the following facts.

[PROPOSED] FINDINGS AND CONCLUSIONS - 2

### A.    Clinton's Underlying Copyright Infringement Litigation.

1.      Plaintiff George Clinton, a Florida resident, initiated this action on December 10, 2010, alleging claims for copyright infringement, declaratory judgment, and injunctive relief.  (ECF No. 1.)

2.      Three attorneys or firms appeared on behalf of Clinton in the underlying copyright infringement action, two of which—ALG and Thennisch—claim an entitlement to a portion of the settlement funds.  ALG filed Clinton's original complaint in December 2010 (ECF No. 1), but substituted out in July 2011 (ECF Nos. 46, 47).  Larry Haakon Clough then substituted in as counsel for Clinton.  (ECF No. 47.)  On August 2, 2011, Thennisch was admitted *pro hac vice* to appear on behalf of Clinton and he and Clough remain counsel of record for Clinton in this action.  (*See* ECF No. 51.)

3.      On May 14, 2012, the parties to the underlying copyright infringement action notified the Court that they had reached a settlement (ECF No. 110), and on May 31 asked the Court to approve the settlement and dismiss the action under FED. R. CIV. P. 41(a) (ECF No. 114).  The Court granted the request on June 7, 2012 (ECF No. 118), and the parties filed a stipulated dismissal with prejudice of the underlying action on June 8 (ECF No. 120).

**B.    Claimants to the Settlement Funds.**

4.    On June 8, 2012, Clinton filed under seal a Motion for Division and Distribution of Settlement Funds Under Fed.R.Civ.P. 69(a) proposing an allocation of the settlement funds from his underlying copyright infringement action among Clinton for his alleged tax liability to the IRS, judgment creditor H&L, and Clinton's former and current counsel ALG and Thennisch.  (*See* ECF Nos. 121, 132.)  Because the Ninth Circuit reversed that portion of the 2012 Order allocating funds to the IRS (*see* ECF No. 156 at 3), the only remaining claimants are H&L, ALG, and Thennisch.

*i.    Judgment Creditor H&L.*

5.    H&L is a judgment creditor of Clinton based on a judgment against him for $1,675,639.82, entered by the United States District Court for the Western District of Washington in May 2010, and registered in this District on August 10, 2010, pursuant to 28 U.S.C. § 1963.  (ECF No. 9.)  Based on that judgment, H&L filed a Notice of Lien in this action on January 3, 2011, pursuant to CAL. CIV. PROC. CODE § 708.410 *et seq.*  (ECF No. 9.)  As of September 12, 2014, the unpaid balance due on the judgment including accrued interest was $1,304,340.72, and no payments had been received on the judgment since April 2013.

[PROPOSED] FINDINGS AND CONCLUSIONS - 4
DWT 24857068v1 0081687-000003

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ii.  *Former Clinton Counsel ALG.*

6.      ALG represented Clinton in his underlying copyright infringement action from its inception on December 10, 2010, until ALG substituted out on July 20, 2011.  (ECF Nos. 1, 46, 47.)  ALG claims to have represented Clinton under a contingent fee agreement but did not produce a copy of the agreement or provide competent evidence of its content with respect ALG's claim to a charging lien on the proceeds of this action.  ALG represented only that it "rendered all legal services for Mr. Clinton pursuant to a written engagement letter."  (Declaration of Robert J. Allan executed June 25, 2012 ("Allan Decl.") ¶ 4.)

7.      On July 19, 2011, ALG filed a Notice of Claim of Lien for Attorney's Fees and Costs in this action alleging a lien based on an assignment dated November 30, 2010, made by Clinton to ALG.  ALG asserted that its alleged "lien attaches to all settlement proceeds payable to, or judgments in favor of" Clinton in this action.  (ECF No. 43.)  ALG claimed (i) a charging lien for fees and costs incurred in representing Clinton in his underlying copyright infringement action and (ii) a contractual lien for other legal services performed for him premised on an alleged UCC Article 9 security interest.  In support of its claimed liens, ALG provided a declaration to which were attached the "Assignment of Monies" dated November 30, 2010, a UCC Financing Statement filed with the California

[PROPOSED] FINDINGS AND CONCLUSIONS - 5

Secretary of State, and a "Pre-bill Worksheet" purporting to document the legal services performed for Clinton.  (*See generally* Allan Decl.)

8.     On December 1, 2012, ALG filed a UCC financing statement with the California Secretary of State, claiming a security interest in collateral ALG described as:

> George Clinton's "chose in action" or claims against members of the
> musical group The Black Eyed Peas and others for the unauthorized
> use of Mr. Clinton's master sound recording(s) of (Not Just) Knee
> Deep, a/k/a Knee Deep (the "BEP Action") and any and all proceeds
> arising from the BEP Action by way of settlement or satisfaction of
> judgment to the extent necessary to pay the lien of [ALG] for fees and
> costs incurred by [ALG] on behalf of Mr. Clinton for [various matters
> other than the BEP Action].

(Allan Decl. ¶ 6 and Exh. 2.)  Clinton did not sign the UCC financing statement. (*See* Allan Decl. Exh. 2.)

### iii.     Current Clinton Counsel Thennisch.

9.     Thennisch represented Clinton in the underlying copyright infringement action from August 2, 2011, when the Court granted his *pro hac vice* application, through the stipulated dismissal of the action on June 8, 2012.  (ECF Nos. 51, 120.)

[PROPOSED] FINDINGS AND CONCLUSIONS - 6

DWT 24857068v1 0081687-000003

10.     Thennisch also asserted a claim to a portion of the settlement funds based on an alleged contingent fee arrangement with Clinton in connection with the underlying copyright infringement action.  In support of his claimed lien, Thennisch provided a declaration stating only that he had a "30% contingent fee arrangement" with Clinton and providing a summary calculation of his fees and costs.  (ECF No. 132 Exh. E at ¶ 2.)  Thennisch, like ALG, did not provide a copy of his fee agreement with Clinton or any other evidence of its content with respect to his claimed lien.

11.     Thennisch does not dispute that he undertook representation of Clinton in the underlying copyright infringement action after H&L obtained its judgment against Clinton and after H&L filed its Notice of Lien in this action. Thennisch also does not dispute that he was aware of both H&L's judgment against Clinton and H&L's Notice of Lien when he began representing Clinton in this action.  (*See* ECF No. 132 at 12, 15-16.)

## III.   CONCLUSIONS OF LAW.

### A.     Judgment Lien Under Section 708.410 *et seq.*

1.     Under California judgment enforcement law, a judgment creditor "who has a money judgment against a judgment debtor who is a party to a pending action . . . may obtain a lien" on both the debtor's cause of action and his right to money under any judgment procured in the action by filing a notice of lien in the

[PROPOSED] FINDINGS AND CONCLUSIONS - 7
DWT 24857068v1 0081687-000003

action.  CAL. CIV. PROC. CODE § 708.410(a), (b).  A judgment creditor with a lien

created under Section 708.410 may, but is not required to, intervene in the

judgment debtor's pending action in order to enforce the lien.  *See* CAL. CIV. PROC.

CODE § 708.430; *Brown v. Superior Court of Sacramento Cnty.*, 116 Cal. App. 4th

320, 327, 9 Cal. Rptr. 3d 912 (2004).

2.     Consistent with Sections 708.410 and 708.420, H&L obtained a lien

on any recovery by Clinton in his underlying copyright infringement action—

including the settlement funds at issue—by filing a Notice of Lien in this action on

January 3, 2011.  (ECF No. 9.)  H&L is therefore a judgment lien creditor.  (*See*

ECF No. 156 at 3.)  As a judgment lien creditor, H&L is deemed a party to

Clinton's underlying copyright infringement action without further action on its

part.  *See* CAL. CIV. PROC. CODE § 708.430(b); *Brown*, 116 Cal. App. 4th at 327.

**B.     Attorney Charging Lien.**

3.     "An attorney's lien upon the fund or judgment which he has recovered

for his compensation as attorney in recovering the fund or judgment . . . is

denominated a charging lien."  *Fletcher v. Davis*, 33 Cal. 4th 61, 66, 90 P.3d 1216,

14 Cal. Rptr. 3d 58 (2004) (internal quotation marks omitted).  An attorney's lien

may secure an hourly or contingency fee.  *Fletcher*, 33 Cal. 4th at 66; *Cetenko v.*

*United Cal. Bank*, 30 Cal. 3d 528, 531-32, 638 P.2d 1299, 179 Cal. Rptr. 902

(1982).

[PROPOSED] FINDINGS AND CONCLUSIONS - 8

4.     Unlike other jurisdictions, in California, an attorney's lien is created only by contract and therefore "is not created by the mere fact that an attorney has performed services in a case." *Fletcher*, 33 Cal. 4th at 66 (internal quotation marks omitted); *see also Carroll v. Interstate Brands Corp.*, 99 Cal. App. 4th 1168, 1171-72, 121 Cal. Rptr. 2d 532 (2002).  A contract can create an attorney's lien "either by an express provision in the attorney fee contract . . . or by implication where the retainer agreement provides that the attorney is to look to the judgment for payment for legal services rendered[.]"  *Carroll*, 99 Cal. App. 4th at 1172; *see also Cetenko*, 30 Cal. 3d at 531.  As a consequence, the existence and scope of an attorney's lien necessarily must be determined by examining the language of the contract allegedly giving rise to the lien.  *See Kipperman v. Sutherland (In re Bush)*, 356 B.R. 28, 35 (Bankr. S.D. Cal. 2006).

5.     Unlike a judgment lien creditor who is deemed a party to the underlying action, *see* CAL. CIV. PROC. CODE § 708.430(b), an attorney claiming an attorney's lien on the judgment is not a party and has no right to intervene. *Carroll*, 99 Cal. App. 4th at 1173; *see also Brown*, 116 Cal. App. 4th at 330-31. As a result, the trial court in the underlying action "acts in excess of its jurisdiction when it purports to determine" the existence or validity of the alleged attorney's lien.  *Carroll*, 99 Cal. App. 4th at 1173-74; *see also Brown*, 116 Cal. App. 4th at 328-31.  But an objection to an action in excess of jurisdiction—unlike other

[PROPOSED] FINDINGS AND CONCLUSIONS - 9

DWT 24857068v1 0081687-000003

jurisdictional defects—can be waived.  *Brown*, 116 Cal. App. 4th at 332.  Here, because the parties did not clearly object to the adjudication of the alleged attorney's liens in this action and argued the substance of those alleged liens, the Court has authority to resolve those claims.

6.     Under California law, an attorney is required to establish the existence and terms of a contract that creates, explicitly or implicitly, a charging lien.  *See In re Bush*, 356 B.R. at 35; *Fletcher*, 33 Cal. 4th at 66.  Neither Thennisch nor ALG provided a copy of the agreement under which Clinton is alleged to have granted either of them a lien on the proceeds of his underlying copyright infringement action.  As a general matter, the agreement itself is required to establish its content, *see* FED. R. EVID. 1002, 1003, and Thennisch and ALG did not establish a circumstance in which other evidence of the agreement's content is admissible, *see* FED. R. EVID. 1004.  Therefore, Thennisch and ALG both failed to establish the existence of a valid charging lien on the proceeds of Clinton's underlying copyright infringement action.  *See Gilman v. Dalby*, 176 Cal. App. 4th 606, 620, 98 Cal. Rptr. 3d 231 (2009) (finding that attorneys failed to meet their burden of proving the existence of attorney's lien).

**C.     Lien Priority.**

7.     CAL. CIV. CODE § 2897 provides that "[o]ther things being equal, different liens upon the same property have priority according to the time of their

1

creation[.]"  This first-in-time, first-in-right statute determines the relative

2

priorities between an attorney's contractual lien and a statutory judgment creditor's

3

lien.  *See Cetenko*, 30 Cal. 3d at 534.

4

8.      In *Pangborn Plumbing Corp. v. Carruthers & Skiffington*, the court

5

stated that "if an attorney does not enter into an agreement for a contractual lien

6

7

upon any litigation proceeds until *after* the action has been filed, and *after* a

8

judgment creditor has given notice pursuant to sections 708.410 and 708.420, the

9

judgment creditor's lien will have priority."  97 Cal. App. 4th 1039, 1051, 119 Cal.

10

11

Rptr. 2d 416 (2002).  Similarly, in *Waltrip v. Kimberlin*, the court stated that "[a]n

12

attorney lien does not always have priority over other liens; it does not have

13

priority over prior liens on the same property."  164 Cal. App. 4th 517, 526, 79

14

15

Cal. Rptr. 3d 460 (2008).  Although these statements are dicta, they are statements

16

of California law by California courts and they are consistent with one another.

17

Moreover, these statements are consistent with CAL. CIV. CODE § 2897's first-in-

18

19

time, first-in-right rule, which has been applied to give priority to an attorney lien

20

when that lien is created *before* a judgment lien is created, which is not the case

21

here.  *See, e.g.*, *Brown*, 116 Cal. App. 4th at 328; *Oldham v. Cal. Capital Fund,*

22

23

*Inc.*, 109 Cal. App. 4th 421, 435, 134 Cal. Rptr. 2d 744 (2003); *Hoover-Reynolds*

24

*v. Superior Court of San Diego Cnty.*, 50 Cal. App. 4th 1273, 1277, 58 Cal. Rptr.

25

26

2d 173 (1996).

27

28

~~[PROPOSED]~~ FINDINGS AND CONCLUSIONS - 11

DWT 24857068v1 0081687-000003

9.    Because H&L's judgment lien was admittedly created before any alleged attorney lien arising under Thennisch's agreement with Clinton for the underlying copyright infringement action (*see* ECF No. 132 at 12, 15-16), H&L's lien has priority over Thennisch's claim to a portion of the settlement funds.

10.    Even if the contingency claims of Thennisch and ALG had priority over H&L's judgment lien, Clinton is not required to make a double payment of fees.  Under California law, a client may discharge an attorney at any time for any reason and the client's only obligation is to compensate the discharged attorney in quantum meruit for the reasonable value of services rendered.  *Fracasse v. Brent*, 6 Cal. 3d 784, 790-91, 494 P.2d 9, 100 Cal. Rptr. 385 (1972).

11.    California courts use a pro rata formula to distribute the earned contingent fee among the discharged and current attorneys in proportion to the time spent on the case by each.  "Such a formula insures that each attorney is compensated in accordance with work performed . . . while assuring that the client will not be forced to make a double payment of fees."  *Spires v. Am. Bus Lines*, 158 Cal. App. 3d 211, 216, 204 Cal. Rptr. 531 (1984).  To determine the extent of partial performance, a court must calculate a fraction where the numerator is the value of the legal services rendered by the particular attorney and the denominator is the aggregate value of all the legal services rendered by any attorney in the case. The fraction may then be adjusted upward or downward to account for the

[PROPOSED] FINDINGS AND CONCLUSIONS - 12

difficulty of the work or other relevant factors.  *See Cazares v. Saenz*, 208 Cal. App. 3d 279, 288-89, 256 Cal. Rptr. 209 (1989).

12.     Therefore, under California law, Thennisch and ALG would have to share the 30 percent each claims but Thennisch and ALG have failed to provide sufficient information for the Court to determine the necessary proration between them.  Thus, even if the Court had concluded that H&L's judgment lien did not have priority, Thennisch and ALG have failed to support their claim to a specific portion of the settlement funds based on this governing law.

**D.     ALG's UCC Article 9 Security Interest Claim.**

13.     ALG also claimed an entitlement to part of the settlement funds for legal services performed on Clinton's behalf in other matters based on an alleged UCC Article 9 security interest arising from the "Assignment of Monies."  On December 1, 2012, ALG filed a financing statement with the California Secretary of State claiming the alleged security interest.  (Allan Decl. ¶ 6 and Exh. 2.)

14.     The Court need not decide whether Clinton granted ALG a valid security interest in his underlying copyright infringement action or its proceeds because ALG failed to perfect its alleged security interest under applicable law because ALG did not file its financing statement in Florida, Clinton's residence. Consequently, its alleged security interest is unperfected and subordinate to the judgment lien of H&L.

[PROPOSED] FINDINGS AND CONCLUSIONS - 13

15.     UCC Section 9-301 specifies the law governing perfection of security interests:  "[W]hile a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral."  U.C.C. § 9-301(1) (2012); *see also* CAL. COM. CODE § 9301(1); FLA. STAT. § 679.3011(1).  An individual debtor is "located" at the individual's principal residence.  U.C.C. § 9-307(b)(1) (2012); *see also* CAL. COM. CODE § 9307(b)(1); FLA. STAT. § 679.3071(2)(a).  Because Clinton's principal residence is in Florida (*see* ECF No. 1 at ¶ 9), that state's law governs perfection and priority.

16.     In Florida, a security interest is perfected by filing a financing statement with the Florida Secured Transaction Registry.  FLA. STAT. § 679.5011(1)(b).  But here, ALG filed its financing statement in California with the California Secretary of State (*see* Allan Decl. ¶ 6 and Exh. 2), rather than in Florida with the Florida Secured Transaction Registry as required by applicable Florida law.  ALG's claimed security interest is therefore unperfected and subordinate to H&L's judgment lien.  *See* FLA. STAT. § 679.3171(1)(b)(1) ("A security interest . . . is subordinate to the rights of . . . a person who becomes a lien creditor before the . . . security interest . . . is perfected[.]"); *see also* U.C.C. § 9-317(a)(2)(A) (2012).

17.     In any event, although ALG's UCC financing statement purports to cover Clinton's "chose in action" or "claims against" the defendants in the underlying copyright infringement action and "any and all proceeds arising from" it, the "Assignment of Monies" did not expressly grant a security interest in the action nor did it assign the action itself.  (Allan Decl. Exhs. 1, 2.)  Rather, in the "Assignment of Monies" Clinton merely agreed "to irrevocably assign any and all money due to [him] based on the claim(s) made by [him] in" the underlying copyright infringement action.  (Allan Decl. Exh. 1.)  The "Assignment of Monies" therefore reflects only Clinton's promise to pay proceeds from the action that may accrue in the future, which does not establish a security interest.  *See, e.g.*, *Maze v. Sycamore Homes, Inc.*, 230 Cal. App. 2d 746, 754, 41 Cal. Rptr. 338 (1964) (an assignment of monies from a specific source is "some security against dissipation of such funds otherwise by defendant," but "in no manner constituted a lien against the properties and as such was not a true 'security' for the repayment").

18.     Additionally, even if Clinton had granted ALG a security interest in the proceeds of the underlying copyright infringement action, ALG received only a promise to pay money that might accrue in the future as a means of collecting its fees, which is not protected collateral.  Section 9-109(d) of the UCC excludes from protected collateral "an assignment of . . . payment intangibles, . . . which is for the purpose of collection only," and "an assignment of a right represented by a

[PROPOSED] FINDINGS AND CONCLUSIONS - 15

judgment, other than a judgment taken on a right to payment that was collateral." U.C.C. § 9-109(d)(5), (9) and cmt. 12 (2012); *see also* CAL. COM. CODE § 9109(d)(7), (9); FLA. STAT. § 679.1091(4)(g), (i).

19.     Under the UCC, a non-possessory security interest does not attach and is not enforceable unless (i) "value has been given," (ii) "the debtor has rights in the collateral or the power to transfer rights," and (iii) "the debtor has authenticated a security agreement that provides a description of the collateral."  U.C.C. § 9-203(b) (2012); *see also* CAL. COM. CODE § 9203(b); FLA. STAT. § 679.2031(2).

**E.     Award of Settlement Funds.**

20.     Based on the foregoing findings and conclusions, the Court hereby orders that all of the settlement funds in Clinton's underlying copyright infringement action, including those funds currently being held and all funds to be paid in the future pursuant to the settlement agreement, be paid to H&L until its judgment, including interest, is satisfied in full.

**IT IS SO ORDERED.**

December 5, 2014.

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

[PROPOSED] FINDINGS AND CONCLUSIONS - 16
DWT 24857068v1 0081687-000003